J-S54003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PAUL MAJORSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES LIEBER, ESQUIRE, THOMAS | : | No. 798 WDA 2017 |
| HUBER, ESQUIRE, JACOB SIMONS, | : | |
| ESQUIRE, LIEBER & HAMMER, P.C., | : | |
| LIEBER HAMMER HUBER & | : | |
| BENNINGTON, P.C. AND LIEBER | : | |
| HAMMER HUBER & PAUL, P.C. | : | |
| | : | |
| | : | |

Appeal from the Order May 24, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-013150

BEFORE: PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY PANELLA, J.:                    **FILED MARCH 08, 2019**

Appellant, Paul Majorsky,[1] challenges the order entered in the Allegheny County Court of Common Pleas, granting the preliminary objections of James Lieber, Esquire, Thomas Huber, Esquire, Jacob Simons, Esquire, Lieber & Hammer, P.C., Lieber Hammer Huber and Bennington, P.C., and Lieber Hammer Huber & Paul, P.C. (collectively, "Appellees").

---

[1] As the trial court acknowledges in its opinion pursuant to Pa.R.A.P. 1925(a), Margaret Majorsky's inclusion on the caption is in error. Appellant's amended complaint does not state any claim involving Mrs. Majorsky. We therefore proceed without consideration of Mrs. Majorsky's role in this action, and have modified the caption accordingly.

The tortuous factual and procedural history of this case is summarized as follows. Appellant and two business partners, George Douglas and J.C. Natale, purchased the D.J. Hess Advertising Company ("D.J. Hess") in 2001. D.J. Hess is a partnership that sells promotional products, items such as keyrings and pens inscribed with a company's name. Two years after acquiring the business, Douglas and Natale voted to change the compensation scheme for partners.

As a result, Appellant left the company and formed a new business, Peg's Custom Products (among others). Appellant's businesses also sold promotional products. He then filed suit against Douglas and Natale. In his lawsuit, Appellant alleged violations of the Pennsylvania Uniform Partnership Act, as well as damage to his business interests and reputation in the promotional products industry. Douglas and Natale filed an answer and counterclaims, alleging Appellant's new business competed with D.J. Hess, in violation of Appellant's fiduciary duty to the partnership. Douglas and Natale named Appellant's wife, Margaret Majorsky, as an additional defendant in the action.

The case proceeded to a bench trial. After four days of testimony, the parties agreed to a consent verdict. The consent verdict dictated that Douglas and Natale pay Appellant $10,000.00 in damages. Importantly, the verdict did not state the basis for recovery or for the amount of damages, and did not attribute the verdict to any specific claim in the complaint. The parties also did not execute a settlement agreement or release. The court entered the

verdict, and Appellant and Mrs. Majorsky filed a praecipe to discontinue the action.

After his discontinuation of the first action, Appellant retained Appellees' legal services. Within a year, Appellant and Mrs. Majorsky commenced a second lawsuit, also premised on the dissolution of his partnership with Douglas and Natale. Chief among the causes of action was Appellant's contention that Douglas and Natale continued to use his name on the company's website during the pendency of the previous litigation. In the previous litigation, Appellant complained that D.J. Hess's website listed Douglas's name before his own. In this new action, Appellant averred the use of his name on the website siphoned professional contacts from Appellant's new promotional products business in violation of the Lanham Act, 15 U.S.C. § 1125. Appellant also alleged Douglas and Natale had engaged in wrongful use of civil proceedings when they sought to include his wife as an additional defendant in the prior action.

The court sustained Douglas and Natale's preliminary objections, and dismissed the wrongful use of civil proceedings claim. Appellant filed an amended complaint, and Douglas and Natale filed a motion for summary judgment. The court granted the motion.

On appeal, this Court affirmed the judgment, finding many of Appellant's claims were waived. *See **Majorsky v. Douglas**, 58 A.3d 1250 (Pa. Super. 2012). After evaluating Appellant's Lanham Act claims on their merits, the panel ultimately found Appellant was due no relief. **See *id*.**, at 1261-1265.

The Pennsylvania Supreme Court denied allowance of appeal, and the United States Supreme Court denied *certiorari*.

Following the failure of the second lawsuit, Appellant and Mrs. Majorsky filed the instant complaint against his attorneys in that action. In it, they alleged legal malpractice: specifically, that Appellees committed professional malpractice by failing to adequately argue the false advertising theory under the Lanham Act. **See** Initial Complaint, at ¶71. Appellant and Mrs. Majorsky also claimed breach of contract, breach of fiduciary duty, fraud, and loss of consortium.

Appellees filed preliminary objections. Appellant then filed an amended complaint, alleging only professional malpractice and breach of contract.[2] Appellees again filed preliminary objections. Following oral argument, the trial court sustained Appellees' preliminary objections, and dismissed Appellant's amended complaint with prejudice. Appellant timely filed a notice of appeal, and complied with Pa.R.A.P. 1925(b).

On appeal, Appellant challenges the trial court's order sustaining Appellees' preliminary objections. "In reviewing a trial court's grant of preliminary objections, the standard of review is *de novo* and the scope of review is plenary." **Kilmer v. Sposito**, 146 A.3d 1275, 1278 (Pa. Super. 2016) (citation omitted). We consider whether the court committed an error

---

[2] Mrs. Majorsky was named in the original complaint and remained on the caption in Appellant's amended complaint. However, none of the claims presented in the amended complaint pertain to Mrs. Majorsky.

of law. *See **Adams v. Hellings Builders, Inc.***, 146 A.3d 795, 798 (Pa. Super. 2016).

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Feingold v. Hendrzak***, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

Appellant contends his attorneys should have argued "false advertising involving literal falsity" in his case against Douglas and Natale. Appellant's Brief, at 23. Appellant maintains he repeatedly implored Appellees to invoke such a claim in the amended complaint and throughout the litigation, but that Appellees instead chose to pursue a trademark infringement claim under the Lanham Act. Appellant asserts his claims of literal falsity under the Lanham Act would have succeeded in the underlying case against Douglas and Natale, if not for Appellees' professional malpractice.

"The elements of a legal malpractice action, sounding in negligence, include: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such

failure was the proximate cause of the harm to the plaintiff." ***Wachovia Bank, N.A. v. Ferretti***, 935 A.2d 565, 570-571 (Pa. Super. 2007) (citation omitted).

> [A] legal malpractice action is distinctly different from any other type of lawsuit brought in the Commonwealth. A legal malpractice action is different because ... a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action …. It is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent in the handling of the underlying action and that negligence was the proximate cause of the plaintiff's loss since it prevented the plaintiff from being properly compensated for his loss.

***Kituskie v. Corbman***, 714 A.2d 1027, 1030 (Pa. 1998) (footnote omitted).

"Therefore, an important question in a legal malpractice action is whether the plaintiff had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case[.]" ***Heldring v. Lundy Beldecos & Milby, P.C.***, 151 A.3d 634, 642 (Pa. Super. 2016) (citation, internal quotations, and emphasis omitted).

Here, Appellant's amended complaint avers Appellees were hired as his attorneys in the underlying action to pursue claims against Douglas and Natale. ***See*** Second Amended Complaint, ¶74. Appellant alleges Appellees committed professional negligence by failing to argue and prove the Lanham Act claim of "literal falsity." ***See id***., ¶¶75-77. Appellant concludes that Appellees' failings cost him "his share" of the $671,816.00 in the underlying case. ***See id***., ¶¶71, 79.

- 6 -

In order to assess his legal malpractice charge, then, we are required to evaluate Appellant's "literal falsity" claim.

The Lanham Act states, in relevant part:

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1).

The Lanham Act establishes two distinct bases for liability – false association, and false advertising. *See Weirton Medical Center, Inc. v. Introublezone, Inc.*, 193 A.3d 967, 974 (Pa. Super. 2018).

"To establish a false association claim, the owner of an unregistered mark has the burden … of proving the existence of a protectable mark." *Id*. (citation and internal quotations omitted). "When … the mark is a surname, a necessary step in showing that it is eligible for protection as a trademark is demonstrating that it has acquired secondary meaning." *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226 (3d Cir. 2017) (citation omitted). "A personal

name acquires secondary meaning as a mark when the name and the business become synonymous in the public mind and the secondary meaning submerges the primary meaning of the name as a word identifying a person, in favor of its meaning as a word identifying that business." ***Majorsky***, 58 A.3d at 1261 (citation, internal quotations, and emphasis omitted).

In contrast, a false advertising claim requires a plaintiff to establish:

1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

***Weirton***, 193 A.3d at 974 (citation omitted). "A false advertising claim must misrepresent the nature, characteristics, qualities or geographic origin of a product." ***Parks***, 863 F.3d at 226 (citations and footnote omitted). "False advertising claims do not require proof of secondary meaning, so litigants may be tempted to frame a false association claim as a false advertising claim, to ease their evidentiary burden." ***Id***. (citation omitted).

Appellant claims his attorneys failed, despite his repeated requests, to present a theory of "false advertising involving literal falsity" under the Lanham Act. Second Amended Complaint, at ¶¶16-17. However, Appellant's underlying claim against Douglas and Natale presents what is "essentially a false association claim in disguise." ***Parks***, 863 F.3d at 226.

Appellant complains Douglas and Natale falsely held him out to be part of the D.J. Hess advertising company, by failing to remove his name from their website. Indeed, his contention centers on "the implication that [Appellant] was associated with D.J. Hess Advertising[, which] had the effect of directing [Appellant's] personal business contacts away from Peg's Custom Products to D.J. Hess Advertising[.]" Second Amended Complaint, ¶12. He does not claim Douglas and Natale made untrue claims about the products they sold, only that he remained erroneously associated with the company due to the retention of his name on the company's website. This, clearly, is a false association claim masquerading as a false advertising claim.

Instead of raising this groundless false advertising claim in the underlying action, Appellees pursued a false association claim against Douglas and Natale. The trial court rejected the claim, as the "mere presence of [Appellant's] name on the website did not constitute a Lanham Act violation." *Majorsky*, 58 A.3d at 1261 (citation omitted). After evaluating whether Appellant's name was entitled to trademark protection, a necessary component of a false association claim, this Court affirmed the trial court's decision. *See id*., 1261-1265.

Appellant, therefore, has not proven he had a viable cause of action against Douglas and Natale in the underlying case. Appellees could not put forth a false advertising claim on Appellant's behalf absent any false claims the D.J. Hess company made about the products they sold. Consequently, Appellees wisely limited the action to the Lanham Act claim that Douglas and

Natale continued to falsely associate Appellant with their company. Appellees therefore attempted to prove Appellant's name was a protectable mark, as a necessary component of a false association claim. Though the trial court and the *Majorsky* panel agreed Appellant's false association claims also lacked merit, pursuing Appellant's wholly unsupported false advertising claim instead would have been futile.

Because he is unable to prove his false advertising allegation in the underlying case against Douglas and Natale, Appellant's legal malpractice case against Appellees necessarily fails. Appellees cannot be found to have breached their duty of representation to Appellant by declining to pursue a baseless false advertising claim. Accordingly, we affirm the trial court's order sustaining Appellees' preliminary objections.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2019